426 P.2d 663

**FIRST NATIONAL BANK OF ARIZONA,** a National Banking Association, and Nicholas Neal Siciliano, Larry Ray Lawrence, Celia Faith Ford, Raymond Matthew Ford and William Clayton Ford, Minors, and All Unborn Children of the Plaintiffs, Appellants,

v.

Rosemary Davison **TAYLOR,** Margaret Davison Lawrence and Penny Davison Ford, Appellees.

No. 2 CA–CIV 322.

Court of Appeals of Arizona.

April 4, 1967.

Rehearing Denied May 16, 1967.
See 5 Ariz.App. 422, 427 P.2d 556.

Wood & Platt, by George Wood, Coolidge, and Tom Fulbright, Florence, for appellants.

Laney, Randolph, Warner & Angle, by Lynn M. Laney, Sr., Phoenix, for appellees.

MOLLOY, Judge.

This appeal requires judicial interpretation for the first time of an unusual code provision which has been a part of our law since at least 1901. The section, as it appears in our 1956 code, reads as follows:

"§ 14–104. Spendthrift trust; creation; termination

"A. When a person apprehends that his estate will be squandered if left to the management or control of his child because of such child's idleness, dissipation or extravagance, the person may by his will leave his estate to a trustee appointed by will with full power of management and control, the income or increase of which shall be paid to the child for his maintenance and support after deducting expenses of management.

"B. The superior court of the county where the estate is located, or where the trustee resides, may at any time remove the trustee if it appears that the estate is being wasted or improperly managed, and may appoint another trustee for the management thereof, taking bond from him in a principal amount at least equal to the value of the estate, for the faithful performance of the trust.

"C. If the child entitled to the estate or any part thereof, shall, at any time, make it appear to the satisfaction of the court that the cause for leaving the estate in trust no longer exists and that there is no danger of it being squandered by idleness, dissipation or extravagance, the court shall dissolve the trust, and place the estate in possession of the person who would have been entitled to it had the trust not been created." A.R.S. § 14–104.

In pursuance of section C of this statute, the plaintiffs, children of Helen Davison, deceased, secured a judgment in the court below terminating a trust established in her last will and testament, which had designated First National Bank of Arizona as trustee, and the plaintiffs and their children as beneficiaries.

At the time of her death, Helen Davison had five children, three of them the plaintiffs here. In her will, she directed that her estate be divided by her exectuor into five shares, two of which were to be distributed outright to her two oldest offspring. As to the three youngest, however, she directed that the shares be held in trust, the income to be paid to these three children for their respective lives and the remainder to be held in trust for her children's children *per stirpes,* the respective shares to be distributed to these grandchildren as they reached twenty-one years of age.

The trustee, under the will, had complete management and control of the trust property and the authority, in its discretion, to invade the principal for the benefit of the

beneficiaries. In the will it was also provided:

"SEVENTH: The principal and income of the trust property shall not be liable to seizure for the debts or liabilities of any person entitled to a beneficial interest therein, nor shall any beneficiary hereunder have the right to sell, encumber or in any manner anticipate or dispose of any part of such interest."

The complaint filed below generally alleged, and the trial court specifically found:

" * * * that the causes for creating the spendthrift trust set out in the will of Helen Davison, deceased, were the extravagance of the three plaintiffs, who were then minors, and the likelihood that, if they thereafter were married and bore children, they would inculcate extravagance in such children, and the apprehension of the testatrix that the portions of her estate so left in trust would be squandered if left to the management or control of the persons named as beneficiaries of the trust. The Court further finds that the plaintiffs have shown to the satisfaction of the Court that the causes for leaving said estate in trust no longer exist, and that there is now no danger of said estate being squandered by idleness, dissipation or extravagance."

In accordance with these findings, and under the purported authority of paragraph "C" of A.R.S. § 14–104, the lower court terminated the trust and directed distribution of the entire estate to the plaintiffs.

Five minor children of two of the plaintiffs, ranging in age from nine years to one year, were joined as defendants, as well as all unborn children of the three plaintiffs. These children, by their guardian ad litem, join the trustee in an appeal from the judgment below.

The subject statute appears to have no counterpart in any other state. It has been singled out for the comment that its provisions are "peculiar," 1 Scott on Trusts § 152.1, p. 752, and "far from clear," Griswold, Spendthrift Trusts § 155, p. 124. Though the statute contains no provision regarding the alienability of the trust estate by the beneficiary, counsel for all parties before the court have conceded that its purpose was to authorize spendthrift, nonalienable trust estates.

If this were its purpose, evolution in law has probably made the statute unnecessary, as the trend has been away from the "English" view holding such trusts invalid and toward the "American" view, upholding them in the absence of statute forbidding them. See 54 Am.Jur. Trusts § 152, p. 126; annotations 119 A.L.R. 19, 34 A.L.R. 2d 1335, at 1337. The Restatement of Trusts (Second), upholds "spendthrift trusts," §§ 152 and 153, with certain limitations, §§ 153(3), 156, 157, even though the beneficiary is competent to manage his own affairs, Comment g, § 152.

The subject statute first appears in the 1901 Revised Code as § 4232. Professor Griswold was unable to trace the verbiage of the statute to its source, though he speculated it may have had its origin in a "curious" provision of the Howell Code of 1864, ch. XLII, § 43,[1] which permitted an *inter vivos* deed of real estate from parent to child, with a restriction against alienation of the property in the deed. See p. 125 of Griswold's work, supra, n. 1.

The only analogous statute called to our attention is a Georgia provision,[2] under

1. Repealed by Ariz.Rev.Stat. (1887) § 3257.

2. "108–114. (3729) For whom trusts may be created.—Trust estates may be created for the benefit of any minor or person non compos mentis. Any person competent by law to execute a will or deed may, by such instrument duly executed, create a trust for any person

of full age, whenever in fact such person is, on account of mental weakness, intemperate habits, or wasteful and profligate habits, unfit to be intrusted with the right and management of property: Provided, the requirements of the law in all other respects are complied with. When created by deed, the deed shall be recorded where the cestui que trust resides, within three months from its ex-

which the Georgia Supreme Court has upheld the termination of a trust when the "grounds of such trust shall cease." De Vaughn v. Hays, 140 Ga. 208, 78 S.E. 844 (1913; Munford v. Peeples, 152 Ga. 31, 108 S.E. 454 (1921); and Salter v. Salter, 209 Ga. 90, 70 S.E.2d 453 (1952). However, none of these cases are pertinent, as the court in each case found that there were no express trust provisions for minor children. These Georgia cases involve a statute of uses[3] which has no counterpart in Arizona. In Georgia, unless there are beneficiaries of the trust who are minor children or persons non compos mentis, a trust becomes "executed" under this law and may be terminated by the cestui who is *sui juris* against the wishes of the trustee. Thompson v. Sanders, 118 Ga. 928, 930, 45 S.E. 715, 716 (1903); Stephens v. Stephens, 218 Ga. 671, 130 S.E.2d 208 (1963).

Even in Georgia, however, if there are provisions for minor children as remaindermen, the trust will not be terminated to their detriment. This was acknowledged in Munford v. Peeples, supra, in quoting from Sargeant v. Burdett, 96 Ga. 111, 117, 22 S.E. 667, 668 (1895), as follows:

> " 'If there be limitations over, and restrictions in favor of other persons, for whose use a trust is capable of being created, the trust estate would be upheld.' "

108 S.E. at 460.

Also see Sanders v. First National Bank of Atlanta, 189 Ga. 450, 6 S.E.2d 294 (1939).

▮▮ It is well established that ordinarily a trust may not be terminated to the detriment of a future interest and that minor beneficiaries cannot consent to the termination of a trust for their benefit. See 54 Am.Jur. Trusts § 78, pp. 80–81; 89 C.J.S. Trusts § 93(d), pp. 929–930; annotations 123 A.L.R. 1427, at 1434; 163 A.L.R. 852, at 858; Leonardini v. Wells Fargo Bank & Union Trust Co., 131 Cal.App.2d 9, 280 P.2d 81, 49 A.L.R.2d 1085 (1955); Wogman v. Wells Fargo Bank & Union Trust Co., 123 Cal.App.2d 657, 267 P.2d 423 (1954); In re Traung's Estate, 207 Cal.App. 2d 818, 24 Cal.Rptr. 872, 883 (1962); and see Schuster v. Schuster, 75 Ariz. 20, 251 P.2d 631 (1952). The appellees argue that while this may be the general law, here we have an express statute directing that the trust must be terminated under the particular circumstances found by the court.

▮ The search in statutory interpretation is always to find the true intent of the legislature. Cyr & Evans Contracting Co. v. Graham, 2 Ariz.App. 196, 407 P.2d 385 (1965); City of Mesa v. Killingsworth, 96 Ariz. 290, 394 P.2d 410 (1964).

▮ We do not believe that our legislature intended by this statute that the formally expressed desires of testators to establish trusts for grandchildren should be frustrated merely because there is incorporated in the will provisions for inalienability of the trust estate by the beneficiaries.

▮ We hold that this statute by its express terms is limited to testamentary trusts established only for the children of the testator. Subsection A of A.R.S. § 14–104 provides, in part:

> " * * * the person may by his will leave his estate to a trustee * * * the :

ecution, and if not so recorded the same shall be null and void. If at any time the grounds of such trust shall cease, then the beneficiary shall be possessed legally and fully of the same estate as was held in trust, and any person interested may file any proper proceeding in the superior court where the trustee resides to have the trust annulled on that ground, if he so desires. Any person having claims against the beneficiary may avail himself of the provisions of the Code in relation to subjecting trust property to debts in suits at law. (Acts 1866, pp. 146, 147; 1876, p. 26.)"

3. "108–112. (3737) Title merged into equitable interest in executed trust.— In an executed trust for the benefit of a person capable of taking and managing property in his own right, the legal title is merged immediately into the equitable interest, and the perfect title vests in the beneficiary according to the terms and limitations of the trust."

income or increase of which shall be paid to *the child* for his maintenance and support after deducting expenses of management." (Emphasis added) A.R.S. § 14–104, subsec. A.

This trust provides, in addition to the payment of income to a "child," for payments of income and principal to *grandchildren*. We believe these solemnly expressed provisions for the welfare of the next generation render the termination provisions of the subject statute inapposite. The statute provides that a trust may be terminated when " * * * *the* cause for leaving the estate in trust no longer exists * * * " (Emphasis added) The provisions of such a will as this, contingently providing for the use of trust income and, in the discretion of the trustee, trust principal, for the "benefit and education" of grandchildren, has more than one "cause," and these other causes still exist.

Accordingly, we hold that the lower court erred in ordering the subject trust terminated. Judgment reversed.

HATHAWAY, C. J., and KRUCKER, J., concur.